UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JESSICA NICOLE RILEY )<br>*also known as* Jessica N. Marshall, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>OFFICER SILAS, OFFICER PELEKAKIS, )<br>and SULLIVAN CO SHERRIFF'S OFFICE, )<br>)<br>Defendants. ) | 2:23-CV-58 |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff Jessica Nicole Riley filed a pro se Complaint [Doc. 1] and a Motion [Doc. 5] to proceed *in forma pauperis*. The Motion is before the United States Magistrate Judge pursuant to 28 U.S.C. § 636, and the standing orders of this Court. For reasons set forth below, the Court **RECOMMENDS** Plaintiff's claims against Officers Silas and Pelekakis be permitted to proceed.

    **I.**    *IN FORMA PAUPERIS* **MOTION**

In addition to filing a pro se Complaint, Plaintiff filed a Motion [Doc. 5] to proceed *in forma pauperis.* When initially considering the Motion, the Court determined that Plaintiff's application was deficient because it did not meet the requirements of the Prison Litigation Reform Act of 1995 ("PLRA"). Under the PLRA, a prisoner who files a complaint in a district court must tender the full filing fee or must file (1) an application to proceed in forma pauperis without prepayment of fees and (2) a certified copy of his or her inmate trust account for the previous six-month period (or institutional equivalent) obtained from the appropriate official of the prison at which the prisoner is confined. 28 U.S.C. § 1915(a)(2).

In this case, Plaintiff initially provided a certified copy of the balance of her inmate trust fund account, which was signed by a jail official, but she failed to provide a full accounting of her inmate trust fund for the previous six-month period. [Doc. 5]. She explained that she was unable to obtain a copy from the jail in which she was being housed. [Doc. 4]. The Court then provided Plaintiff with additional time to submit the required documentation, which was delayed by Plaintiff's move to a different facility and various issues in mailing the Court's Orders to Plaintiff. [Docs. 6-14]. On August 23, 2023, the Court received a copy of Plaintiff's inmate trust account balance for the past six months. [Doc. 15].[1] The Court now has the requisite information to determine whether Plaintiff should be permitted to proceed without prepayment of fees.

The Court's review of an *in forma pauperis* application is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262-63 (6th Cir. 1990). To proceed *in forma pauperis* the requesting party must show, by affidavit, the inability to pay court fees and costs. 28 U.S.C. §1915(a). At the same time, one need not be destitute to enjoy this benefit. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948). An affidavit to proceed *in forma pauperis* is sufficient if it demonstrates that, because of poverty, the movant cannot afford to pay for the costs of litigation and still pay for the necessities of life. *Id.* at 339. The decision to grant or deny such an application lies within the sound discretion of the Court. *Phipps v. King*, 866 F.2d 824, 825 (6th Cir. 1988).

The Court has now considered Plaintiff's Application to Proceed Without Prepayment of Fees and her economic status in determining whether to grant leave to proceed *in forma pauperis*. The application [Doc. 5] and supplement [Doc. 15] set forth grounds for so proceeding; thus,

---

[1] Plaintiff submitted a copy of her trust account after the deadline. While the Court would normally not permit untimely filings, the delay in this case was due to issues with Plaintiff timely receiving the orders of the Court, which was not the fault of Plaintiff. Accordingly, in the interest of justice, the Court finds it appropriate to permit Plaintiff's filing and consider her trust account documentation in conjunction with her application to proceed *in forma pauperis*.

Plaintiff's Application to Proceed Without Prepayment of Fees [Doc. 5] is **GRANTED**. Because Plaintiff is an inmate, she is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Greeneville, TN 37743, twenty percent (20%) of Plaintiff's preceding month's income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2). The Clerk is **DIRECTED** to file the complaint without prepayment of costs or fees. *Gibson*, 915 F.2d at 262-63; *see Harris v. Johnson*, 784 F.2d 222 (6th Cir. 1986). However, the Clerk is further **DIRECTED** not to issue process until the District Court has ruled on the recommendations contained herein.

Under the Prisoner Litigation Reform Act ("PLRA"), district courts must also screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are brought against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999); s*ee also Neitzke v. Williams*, 490 U.S. 319 (1989). The dismissal standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). To survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe *pro se* pleadings filed in civil rights cases and hold them to a less stringent

standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court now undertakes its role in screening Plaintiff's Complaint [Doc. 1].

## II. FACTUAL ALLEGATIONS

Plaintiff filed her Complaint on April 18, 2023. [Doc. 1]. Therein, Plaintiff alleges she was placed under arrest on January 9, 2023 by two officers of the Sullivan County Sheriff's Department. Plaintiff alleges she was pulled over by Officer Silas based on an arrest warrant, and after being pulled over she took off running. Officer Pelekakis tackled Plaintiff and placed her in handcuffs. Plaintiff alleges that Officer Silas then began to kick her while she was handcuffed on the ground, and that both officers began calling her names. When Plaintiff started to get into the police car, Officer Silas was holding her by the arm. Plaintiff asserts that she was trying to use her collarbone to push hair out of her face, but Officer Silas contended that she was trying to bite him. Plaintiff argues that it would have been physically impossible for her to bite Officer Silas because of the distance between her mouth and his hand on her arm. Officer Silas then punched Plaintiff in the face so hard that she developed a black eye, lost vision in her eye, can no longer open and close her eye properly, and sustained nerve damage and a torn cornea, and that the eye is persistently dry. After the encounter with Officers Silas and Pelekakis, Plaintiff was charged with assault, resisting arrest, and evading arrest. When Plaintiff was taken to jail, Officer Pelekakis recounted the events and stated that Plaintiff had attempted to bite Officer Silas. Plaintiff alleges that she is still currently suffering from the injuries to her eye and has been unable to obtain medical care from the Sullivan County Detention Center. Plaintiff asks that everyone involved be held accountable for their actions and that she be awarded damages from them to compensate her for her pain and suffering.

### III. LEGAL ANALYSIS

#### a. Leniency afforded to pro se litigants

The Court liberally construes Plaintiff's claims because she is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Even under this lenient standard, a claim will be dismissed if it is frivolous, meaning it lacks "'an arguable basis either in law or fact.'" *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). For a complaint to survive the § 1915 screening process, it "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Zelesnik v. GE Healthcare*, No. 1:18-cv-2443, 2018 WL 5808749, at *1 (N.D. Ohio Nov. 6, 2018) (quoting *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010)). This being the case, the Court will not "conjure allegations on a litigant's behalf" to help a pro se litigant survive the §1915 screening process. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). This limitation helps courts avoid "'transform[ing] . . . from their legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies. . . .'" *Profitt v. Divine Sol.*, No. 3:10-cv-311-S, 2010 WL 2203310, at *1 (W.D. Ky. May 27, 2010) (quoting *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985)).

#### b. Law governing civil rights claims

Plaintiff is suing state law enforcement officers under 42 U.S.C. § 1983, which permits suit against government officials for violations of rights under the Constitution or other laws. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). 42 U.S.C. § 1983 creates a federal cause of action where a person acting under color of law causes a plaintiff to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." To successfully pursue a § 1983 action, a plaintiff must demonstrate both that he or she was deprived of rights under the Constitution or

other laws and that a defendant caused the deprivation while acting under color of law. *Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding*, 241 F.3d at 532. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

Plaintiffs may sue municipalities or individual officers under § 1983. Here, Plaintiff has named two individual officers and the Sullivan County Sheriff's Office as defendants.[2] It is well-established that Plaintiffs may sue individual officers in their personal capacities for damages. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "[A]n officer's individual liability under § 1983 must be assessed based on his or her own actions," and a plaintiff must show direct responsibility rather than mere presence. *Davis v. Butler Cnty., Ohio*, 658 F. App'x 208, 214 (6th Cir. 2016) (citing *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984); *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

### c. Plaintiff's claims against Officer Silas

In considering the viability of Plaintiff's claim that Officer Silas used excessive force in conjunction with arresting her, the Court first notes that law enforcement officers, while acting in their official capacity, may be subject to a § 1983 suit for use of excessive force. *See e.g. Smith v. Wilson Cty. Sheriff's Office*, No. 3:18-cv-00462, 2018 WL 3473966, at *3 (M.D. Tenn. July 18,

---

[2] For a municipality to be held liable under § 1983, there must be a showing that harm from the alleged constitutional violation occurred during the "execution of the municipality's policy or custom…" *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008); *see* e.g. *Smith v. Wilson Cty. Sheriff's Office*, No. 3:18-cv-00462, 2018 WL 3473966 at *1, *3 (M.D. Tenn. July 18, 2018) (holding that where a plaintiff failed to allege a municipal police department and county sheriff's department had a policy or custom of tackling and "violently twisting" an arrestee's arm during handcuffing, the plaintiff had not made out a claim actionable under § 1983). In this case, Plaintiff has provided no facts that suggest Sullivan County has a policy of permitting its officers to use excessive force in making an arrest or one that would condone such conduct.

2018); *Deir v. Lake Cty.*, No. 1:12-cv-110, 2012 WL 1142467, at *2 (N.D. Ohio Apr. 4, 2012). It is well-settled that an individual being arrested is not to be subjected to excessive force. *Neague v. Cynkar,* 258 F.3d 504, 507 (6th Cir. 2001).

To determine whether use of force was excessive, the Court applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)). To assess whether force was reasonable, courts consider "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest." *Graham*, 490 U.S. at 396-97.

If an arrestee is restrained and officers continue to apply force, that force is generally considered excessive. *Grinnell v. Taylor*, No. 17-11354, 2021 WL 1736999, *12 (E.D. Mich. May 3, 2021) (citing *e.g., Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) (holding that "[g]ratuitous violence inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial" (internal quotation omitted)); *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) (finding that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable"); *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006) (observing that "a slap to the face of a handcuffed suspect—even a verbally unruly suspect—is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect").

At this stage in the litigation, when employing the factors the Court is to use in determining whether Officer Silas' conduct was objectively reasonable, the Court must take Plaintiff's factual allegations as true. In doing so and considering the first factor, the Court is unable to assess the

severity of the crime that was at issue. While Plaintiff notes that a warrant had been issued for her arrest, and this was the reason that she had been pulled over, she does not explain what underlying charge(s) led to the issuance of the arrest warrant.

Then there is the second factor, i.e., whether Plaintiff posed a threat to officers or others when the force was being used. As Plaintiff has described the facts attendant to her arrest, the Court must find that Plaintiff appeared to pose no danger of harm to others when Officer Silas kicked her and then when he punched her in the face. Plaintiff was handcuffed, and on the ground, when kicked so it is difficult to see how she possibly posed any threat to anyone in that moment. While Officer Silas apparently contends that he punched Plaintiff in the face because she was trying to bite him while he put her in the car, from Plaintiff's description of events, it would have been physically impossible for her mouth to reach his arm. However, even if Officer Silas held a reasonable belief that Plaintiff was trying to bite him, there would still be a serious question as to whether punching Plaintiff in the face so hard that it caused her permanent eye damage was a reasonable response to that perceived threat.

Finally, there is the issue of whether Plaintiff was attempting to flee when force was being used against her. While Plaintiff admits that she initially attempted to run away from officers, she further notes that she was tackled and placed into handcuffs before officers engaged in the use of force that she claims was excessive. Plaintiff was in handcuffs both when Plaintiff claims that Officer Silas kicked her and when he purportedly punched her in the face. While Officer Silas may take the position that Plaintiff was continuing to try to flee or resist through attempting to bite him as he placed her in his patrol car, as noted above, the amount of force he allegedly used appears to have been an excessive response to any such threat.

### d. Plaintiff's claims against Officer Pelekakis

Evaluating the potential liability of Officer Pelekakis is a little different. Officer Pelekakis is not accused of himself using excessive force against Plaintiff. Instead, he is accused of standing by and watching Officer Silas do so without attempting to intervene. While an officer can only be held liable under § 1983 for the officer's own conduct, failing to prevent the use of excessive force by another officer constitutes "conduct" for which an officer can be held liable. *Craft v. Billingslea*, 459 F. Supp. 3d 890, 913 (E.D. Mich. 2020) (citing *Bruner v. Dunaway*, 684 F. 2d 422, 426 (6th Cir. 1982) (holding that a police officer has a duty to try and stop another officer who uses excessive force against a person in the officer's presence)). The Sixth Circuit follows a two-part test for determining when an officer can be held liable for failing to intervene when another exercises excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* The second requirement is generally not satisfied "[w]here an act of excessive force unfolds in a matter of seconds." *Pennington v. Terry*, 644 Fed. App'x 533, 548 (6th Cir. 2016).

Here, Plaintiff alleges that Officer Silas kicked her and punched her in the face while Officer Pelekakis was on the scene and had handcuffed her. In liberally construing Plaintiff's allegations, it appears that Plaintiff is asserting that Officer Pelekakis observed Plaintiff being kicked because he and Officer Silas were both calling her names during the same encounter. The fact that Officer Pelekakis was allegedly calling Plaintiff names along with Officer Silas would appear to be an indication of his support for the actions of Officer Silas. It also appears that Officer Pelekakis observed Officer Silas punch Plaintiff in the face, because she states that Officer Pelekakis recounted the event when they arrived at the jail. Thus, the first element of the two-part

failure-to-intervene test is met, because Plaintiff alleges that Officer Pelekakis was able to observe her being kicked and punched. Additionally, while Plaintiff does not describe a timeline of events in terms of seconds or minutes, a liberal construction of her allegations, which we must provide to a pro se Plaintiff, leads the Court to conclude that she has pled facts sufficient to survive screening as to this element of the two-part test.

### e. *Plaintiff's claims against the Sullivan County Sheriff's Office*

Plaintiff's Complaint also includes a claim against the Sullivan County Sheriff's Office. While Plaintiff does not specifically describe the claims she is bringing against the Sheriff's Office, a liberal construction of her complaint leads to the conclusion that she is suing the Sheriff's Office for excessive force and deliberate indifference to her medical needs.

While suits against local law enforcement divisions, such as the sheriff and police departments, are not actionable under § 1983, in the liberal construction of a pro se pleading the Court may treat a § 1983 claim against a law enforcement division as being made against the city or county government in which the division is housed. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see e.g. Weber v. Louisville Metro Police Dep't*, No. 3:16-cv-85-DJH, 2016 WL 1242584, at *3 (W.D. Ky. Mar. 29, 2016). Section 1983 permits suit against local governments only when the alleged injury results from the enactment of a policy or custom of the municipality. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)). In other words, municipalities "cannot be held liable [for the actions of their employees] under a *respondeat superior* theory for § 1983 violations" unless the employee was implementing a policy or custom of the municipality. *Cooper v. Rhea Cnty., Tenn.*, 302 F.R.D. 195, 200 (E.D. Tenn. 2014) (internal citations omitted).

Plaintiff is suing the Sullivan County Sheriff's Office; therefore, reading Plaintiff's Complaint in a liberal light it may be assumed that she is asserting a claim against Sullivan County, the local government responsible for the administration of the Sullivan County Sheriff's Office. However, Plaintiff has not alleged any facts which would show that the actions which were taken by Officers Silas or Pelekakis, or any other employee that allegedly deprived her of a constitutional right were taken pursuant to a policy or custom of Sullivan County or the Sullivan County Detention Center.

As to Plaintiff's claims for deliberate indifference, she has generally alleged that she has been deprived by the Sullivan County Detention Center of appropriate medical treatment for the injuries inflicted by Officer Silas. However, Plaintiff has not provided any specific description of when she sought this treatment and who specifically denied her request for treatment.

For these reasons, the Court finds that Plaintiff has failed to set forth a colorable claim against the Sullivan County Sheriff's Office. This Court recommends that Plaintiff's claims against Sullivan County be dismissed but that the dismissal be without prejudice as to her claim that Sullivan County has been deliberately indifferent to her medical needs.

IV. **CONCLUSION**

For the reasons stated above, the undersigned **RECOMMENDS** that Plaintiff's claims against the Sullivan County Sheriff's Office be **DISMISSED** but that the dismissal be **without prejudice** at least as to Plaintiff's claim for deliberate indifference. The Court further **RECOMMENDS** that Plaintiff's claims against Officer Silas for excessive force and Officer Pelekakis for failure to intervene, both under 42 U.S.C. § 1983, **be permitted to proceed**. This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 195 F.2d 260, 263 (6th Cir. 1990) wherein the Court

states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed *in forma pauperis*.[3]

    **SO ORDERED:**

                                              /s/Cynthia Richardson Wyrick
                                              UNITED STATES MAGISTRATE JUDGE

---

[3] Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).